IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JAMES LANHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number: 06-CV-01179-HEA |
| ) | |
| SANDBERG TRUCKING, INC., a ) | |
| Corporation, and UNITED STATES ) | |
| OF AMERICA ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT UNITED STATES OF AMERICA'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

COMES NOW Plaintiff, James Lanham, by and through his attorneys, Mary J. Ligocki, Kruse, Reinker & Hamilton, L.L.C., and Thomas C. Rich, Thomas C. Rich, P.C. and hereby files his memorandum in opposition to Defendant United States of America's Motion to Dismiss for lack of subject matter jurisdiction. As the basis for its motion to dismiss, Defendant contends that it has sovereign immunity from the actions complained of by Plaintiff as they fall under the discretionary function exception of the Federal Torts Claim Act ("FTCA"). As discussed below, Defendant is liable in this action under the FTCA and therefore, this Court has subject matter jurisdiction in this case.

**FACTS**

Plaintiff James Lanham ("Plaintiff" or "Lanham") filed a negligence claim against Defendant Sandberg Trucking, Inc., ("Sandberg") and Defendant United States of America ("Defendant" or "Defendant USA") regarding an accident which occurred on April 13, 2006, at the United States Post Office, located at 1720 Market Street, in the City of St. Louis, State of

1

Missouri (hereinafter "the Post Office" or "Premises").  At all times relevant hereto, Plaintiff and Defendant Sandberg were contractors[1] of the United States Postal Service ("USPS").  (*See, Second Amended Complaint* ¶¶ 7, 9; *see also*, Defendant's *Exhibit A,* Contract between the USPS and Sandberg, Contract No. 630M6, Defendant USA's *Exhibit B*;  Contract between the USPS and James D. Lanham, Contract No.62238).[2]  At all times relevant hereto, the Occupational Safety and Health Act of 1970 ("OSHA") was and is applicable to the USPS in the same manner as any other employer.  *See, Postal Employees Safety Enhancement Act*, 112 Stat 1572.

The USPS hired Lanham and Sandberg to load, transport, and unload all classes of mail at designated locations.  (*Exhibit A*, at USA-00046; *Exhibit B*, at USA-00172).  The contracts set for the specific load and unload times for suppliers.  (*Exhibit A,* at USA-00044 – USA-00045; *Exhibit B*, at USA-00170 – USA-00171).  Suppliers are required to drop trailers upon arrival at destinations as directed by a postal official, and suppliers are required to pick up outbound loads at locations directed by a postal official prior to departure.  (*Exhibit A*, at USA-00045; *Exhibit B*, at USA-00172).   The suppliers are required to report in sufficient time at each location to load and depart on schedule.  (*Exhibit A*, at USA-00046; *Exhibit B*, at USA-00172).  In order to maintain schedule, postal personnel may assist with loading and unloading.  *Id.*

While the USPS contract with Sandberg and the USPS contract with Lanham go into great detail regarding time requirements, hiring standards, vehicle requirements and specifications, general requirements and prohibitions, liability for equipment damage and repairs, screening/identification requirements, safety requirements, insurance requirements; the contracts

---

[1] Throughout the contracts referred to herein, the independent contractors are referred to as "suppliers."  For that reason, hereinafter, the term supplier may be used when referring to an independent contractor in general.

[2] Defendant's Exhibits are attached to its Memorandum in Support of its Motion to Dismiss (Defendant's Memorandum").  For the sake of continuity, Plaintiff will refer to Defendant's exhibits and will refer to them as Exhibit ___.

2

are silent as to the workplace safety, as well as the safety requirements of operating USPS equipment, such as dock lifts.  The safety requirements outlined in the contracts deal predominantly with driving safety.  (*Exhibit A*, at USA-00054 – USA-00056; *Exhibit B*, at USA-00178 – USA-00180).  There is one paragraph; however, that provides that "drivers responsible for loading or assisting in the loading of their vehicles must ensure that loads are properly distributed and secured and that doors, tailgates, and other equipment are fastened properly to permit safe operations."  (*Exhibit A*, at USA-00055; *Exhibit B*, at USA-00179).  The contracts also provide that the USPS retains the right to inspect suppliers' equipment upon written notice.  (*Exhibit A,* at USA-00054; *Exhibit B*, at USA-00178).

At all times relevant hereto Defendant USA trained and/or instructed its suppliers on the use, operation and safety procedures and policies on the docks at the Post Office and the use of USPS equipment, including but not limited to the dock lifts and lift controls.  (*See Second Amended Complaint,* ¶ 16).[3]

On April 13, 2006, Plaintiff and an employee of Defendant Sandberg were at the above mentioned Post Office loading docks to perform their contractual duties of loading and/or unloading the mail into and/or from their trucks.  (*See Second Amended Complaint*, ¶¶ 7, 9).  At that time and place, an employee of Defendant Sandberg in an attempt to operate the lift gate at which his vehicle was parked, operated the incorrect lift gate.  The lift gate that he operated was the one on which Plaintiff was standing.  Because of the action of Defendant Sandberg's employee, Plaintiff James Lanham was lifted, fell and pinned under cargo causing serious and permanent injuries.  *Id*, at ¶ 12.  This suit then followed.[3]

---

[3] In depositions conducted on January 8 and 9, 2009, each of the three USPS employees deposed testified, that the USPS Dock Supervisor was responsible for safety in the dock area and any safety issues.  Because these witnesses were unavailable during December, Plaintiff could not

3

**STANDARD OF REVIEW**

When a 12(b)(1) motion attacks the face of a complaint, the plaintiff's burden to prove…subject matter jurisdiction is not onerous. *Musson Theatrical, Inc. v. Federal Express corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff must show only that the complaint alleges a substantial claim under federal law, and can survive the motion by proffering any arguable basis in law for the claim. *Id.*

**ARGUMENT**

Generally, "the United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). Sovereign immunity is a jurisdictional issue, in that the terms of the government's "consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (Citing *State of Minn. v. United States*, 305 U.S. 382, 387 (1939) (A party cannot maintain a suit against the United States without an act of congress)).

The FTCA provides a waiver to sovereign immunity, allowing the United States to be held liable for torts committed by "any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346, 2671-2680 (1946); *Johnson v. U.S.*, 534 F.3d 958, 962 (8th Cir. 2008).

---

secure those depositions until this late date, and the transcripts are not yet available. In addition, two of the employees testified that they train new independent If the Court so desires, Plaintiff can submit the relevant portions of the depositions immediately upon receipt.

The FTCA's waiver of sovereign immunity is limited by several exceptions, one of which removes the effects of some governmental decisions from the waiver in order to protect government policy making. *Demery v. United States Department of the Interior*, 357 F.3d 830, 832 (8th Cir. 2004). Under this exception, the United States may not be sued under the FTCA for "[a]ny claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee or the government, whether or not the discretion involved be abused." *Id*; *citing* 28 U.S.C. 2680(a) (quotations in original).

Whether the discretionary exception applies, requires a two part analysis. First, the Court must determine whether the challenged acts of a government employee "are of the nature and quality that Congress intended to shield from tort liability." *Aslakson v. United States*, 790 F.2d 688, 691 (8th Cir. 1986). Therefore, the government must first establish that the employee's action "involve[d] an element of judgment or choice." *Demery* 357 F.3d at 832 (*citing Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). As a result, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Berkovitz,* 486 U.S. at 536. If the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect. *Id.*

The second part of the analysis requires the Court to determine whether the decision was of the kind that the discretionary function exception was designed to protect. *Berkovitz,* 486 U.S. at 536. "The basis for the discretionary function exception was Congress' desire to 'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkovitz,* 486 U.S. at

5

536-37 (citation omitted); *U.S. v. Varig Airlines*, 467 U.S. 797, 814 (1984); *see also, Aslakson,* 790 F.2d at 691. "When properly construed, the exception 'protects only governmental actions and decision based on consideration of public policy.'" *U.S. v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 1274 (1991). Both parts of the analysis must be met in order for the exception to apply. *Id.*

The application of the FTCA's discretionary exception cannot be defined with exact precision and therefore, the issue must be decided on a case by case basis. *Aslakson,* 790 F.2d at 691. In every case, however, the government bears the burden of establishing that the exception applies. *Prescott v. United States,* 973 F.2d 696 (9th Cir. 1992).

Plaintiff's Second Amended Complaint does not allege that Sandberg is an agent or employee of the USPS; therefore, the argument as to the status of Sandburg and whether the independent contractor exception of the FTCA applies will not be discussed below. Instead, Plaintiff alleges that the United States was negligent in the training of independent contractors on the use and safety of USPS equipment and in instituting appropriate safety procedures in the dock area. *See, Second Amended Complaint, , Count II.* In Count III of Plaintiff's Second Amended Complaint, Plaintiff claims that the Defendant USA was negligent in maintaining its premises in an unsafe condition. As discussed below, the Plaintiff has set forth viable claims in his Second Amended Petition against the United States, neither of which fails under the discretionary function exception.

**A.    WORKPLACE SAFETY AT THE POST OFFICE IS NOT A DISCRETIONARY FUNCTION.**

In section B, of the Defendant USA's Memorandum in Support of its Motion to Dismiss, Defendant claims that it is immune from liability in that the terms of the contract concerning the safety training and supervision of independent contractors are a valid exertion of discretion

6

protected by the discretionary function exception to the FTCA. In other words, Defendant claims that its delegation of safety to independent contractors is a discretionary function exercised by Defendant.

It is true that the FTCA excludes the United States' waiver of immunity on any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a). However, the exception covers only acts that are discretionary in nature, and therefore, "the existence of a choice is essential to the application of the exception." *Camozzi v. Roland/Miller and Hope Consulting Group,* 866 F.2d 287, 290 (9th Cir. 1989)(*citing Berkovitz, supra)*; *accord, United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quotations omitted). The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive. *Id*.

### 1. OSHA applies to the USPS in the same manner as any other employer, and the USPS owes the same duty to Lanham as its own employees.

In this matter there is a federal statute prescribing the course of action with regard to the Defendant's actions. The USPS unarguably has non-delegable duty to adhere to the provisions of the OSHA. OSHA specifically defines the USPS as an employer. *See,* 29 U.S.C. 652(5). OSHA requires that "[e]ach employer shall furnish to each of his employees…a place of employment which is free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. 654(a)(1). In *Teal v. E.I. DuPont de Nemours and Company*, 728 F.2d. 799, 804 (6th Cir. 1984) the Sixth Circuit has stated that Congress enacted Sec. 654(a)(2) for the special benefit of all employees, including the employees of an independent contractor, who perform work at another employer's workplace.

7

Once an employer is deemed responsible for complying with OSHA regulations, it is obligated to protect every employee who works at its workplace. *Id.* at 805; *see also, Marshall v. Knutson Construction Co.*, 566 F.2d 596, 599 (8th Cir. 1977) (duty of general contractor extends to protection of all employees).

The incident involved in this action occurred on the premises of the USPS in an area under the control of the USPS, specifically the dock. Moreover, the USPS was retained control of the safety of that area as it was a workplace for USPS employees.[4] Therefore, the USPS was responsible for safety in the area in which the incident occurred.

In addition, while the contracts between the USPS and Sandberg, and the USPS and Lanham are extensive and cover many issues (*See, Exhibits A and B*); the contracts are silent as to workplace safety. Clearly, the USPS was responsible for providing a safe work environment under OSHA in an area owned and operated by the USPS, and there is no language in the contracts to infer that the USPS delegated those duties.

In addition, the contracts fail to address training or safety, related to the operation of the dock lifts or any of the other USPS equipment. In fact, the Defendant USA trains the independent contractors and each new driver on the operation of USPS equipment, safety issues, and more specifically, the operation of the dock lifts.[5] (*See, Second Amended Complaint* ¶ 16).

In order to comply with OSHA's safe workplace requirement, the Defendant USA has a duty to exercise reasonable care in the training and instructing of its employees and the suppliers

---

[4] In depositions conducted on January 8 and 9, 2009, each of the three USPS employees deposed testified, that the USPS Dock Supervisor was responsible for safety in the dock area and any safety issues. Because these witnesses were unavailable during December, Plaintiff could not secure those depositions until this late date, and the transcripts are not yet available. If the Court so desires, Plaintiff can submit the relevant portions of the depositions immediately upon receipt.
[5] During those same depositions as referred to in preceding reference, the postal employees testified accordingly.

8

while using USPS equipment in the USPS workplace. It is Plaintiff's contention that Defendant USA abrogated this duty by not properly training the suppliers and/or their drivers on the proper operation of its equipment, in failing to institute the appropriate safety policies or procedures, allowing untrained individuals to operate the dock lifts, and in failing to mark the dock lifts in such a way as to allow for proper operation of the dock lifts. (*See, Second Amended Complaint* ¶ 18).

Consequently, the discretionary function does not apply because the USPS is obligated to comply with the standards promulgated by OSHA. Defendant USA's motion to dismiss for lack of subject matter jurisdiction should fail.

**2.  The United States did not delegate its responsibility for safety and training; but instead retained control of the day-to-day functions with regard to its premises and equipment.**

Even assuming, *arguendo,* that OSHA standards are not applicable, the Defendant is still not protected by the discretionary function exception. The Defendant USA, argues that the issues in this case encompass the discretionary function exception to the FTCA, because it lawfully delegated the responsibilities for training and safety, to the independent contractors in the contracts. It is true that the delegation of safety to independent contractors is an appropriate exertion of discretion for which the United States is entitled to sovereign immunity. *Kirchmann v. U.S.*, 8 F.3d 1273, 1276 (8th Cir. 1993). Although, the initial statement of the law is accurate, the remainder of the Defendant USA's argument afoul when the facts of this case are applied to the legal analysis.

While the Defendant USA delegated some of the responsibilities of training drivers to the independent contractors, there is nothing in the contracts to suggest that the government delegated all such duties. Defendant USA cites to Sandberg's admission that it "[trains all of its

9

employees operating under the contract on policies and procedures required to perform the Mail Transportation Contract." Defendant's Exhibit C, ¶8. While this may be true, this statement does not prove that drivers receive training only from their employer and not from Defendant USA. It is merely an affirmation of the fact that drivers receive some training from their employer. Moreover, an independent contractor's responsibility to ensure that its drivers have "sufficient ability to perform properly the required duties" does not delegate all training and safety responsibilities to the independent contractor. *See,* Defendant's Memorandum, p. 2. These requirements burden the independent contractors with no duty beyond ensuring that its drivers are physically capable of performing the duties. Clearly, there is no language requiring Sandberg to train its drivers in *all* duties including those duties involving operation of USPS equipment and safety. In fact, such a requirement would be meaningless because the USPS maintains control of the premises, including its equipment, and would have the specific knowledge necessary for all operations and safety issues related thereto. Furthermore, the United States was responsible for the signs and designation of the dock lifts at the Post Office, which is clearly beyond the scope of the contract but yet related to safety in the areas in which the contractors worked.

This case is similar to the matter of *Sexton v. United States,* 797 F.Supp. 1292 (E.D.N.C. 1991). In *Sexton,* the plaintiff alleged that he was injured as the result of the government's negligent design, construction and maintenance of a grate covering (scuttle door) through which the plaintiff, an employee of an independent contractor, fell through while on the defendant's property. The United States claimed that it was immune from liability because it had delegated all safety issues to the independent contractor. The district court rejected this argument stating "the government did not dissociate itself from all matters of safety or disclaim all concerns in

that regard." *Id.* at 1301. Therefore, the government's actions concerning the retained safety obligations did not involve a policy judgment excluded from the FTCA by § 2680(a). *See also, McGarry v. Unites States, et al.,* 549 F.2d 587 (9th Cir. 1977). Likewise, the USPS did not delegate all safety or training issues in the supplier's contracts.

The *Sexton* court further analyzed the reasonableness of the burden placed upon the independent contractor as it related to the governments argument regarding the delegation of safety issues. In its defense, the United States argued that because it had delegated work place safety to the independent contractor, it was the independent contractor's duty to inspect the scuttle door and discovery any defects. *Sexton,* at 1303. The court rejected this argument stating that the safety obligations under the contract did not reasonably include the discovery of a design defect regarding the scuttle door. *Id.* Similarly, in the case at hand, it would be unreasonable to conclude that the independent contractors possessed the ability to completely train their employees on the use and safety concerning USPS equipment. The equipment was on the premises of the USPS and under the control of the USPS. Consequently, the USPS would have possessed the information necessary to train anyone, including independent contractors and their employees, regarding the operation of USPS equipment.

In support of its position, Defendant cites *Duff v. United States,* for the proposition that, where the government delegated the primary responsibility for safety to the independent contractor and did not retain and exercise control over the project's safety, the government was immune under the discretionary function exception. Defendant's Memorandum, p. 10; 999 F.2d 1280, 1281 (8th Cir. 1993). While the analysis employed by the *Duff* court can be applied to the case at bar, the facts are so distinguishable that they mandate the opposite conclusion.

11

In *Duff,* the government had delegated safety responsibilities to contactor who was varnishing the floors in an apartment adjacent to the plaintiff's. The plaintiff nevertheless, argued that the government's failure to warn her of the noxious fumes was not the type of judgment that the discretionary function exception was designed to protect in that it implicated no social, economic or political considerations. *Id.* at 1281. The Eighth Circuit rejected this argument stating that the decision to delegate allowed the government to "tak[e] advantage of a contractor's special expertise, thereby creating the opportunity for a safer, more efficient operation." *Id. (quotations and citations omitted).* The court continued by stating that, there would be jurisdiction over the government if, however, the government maintained control of the project's safety despite its delegation of the duty. Because the government had not maintained the requisite control, the plaintiff's claim was dismissed. *Id.* at 1282.

In this matter, unlike *Duff*, the USPS did not delegate all safety issues concerning the work performed by the contractor. The only safety issues addressed in the contract deal with driving and transportation of mail issues. (*See, Exhibits A and B, § B.6.)* As discussed above, the government retained control of training the contract drivers on the use and safety of the USPS equipment, and maintained control of the premises as well as all responsibility for safety in the dock area. Therefore the USPS exercised its discretion, when it chose not to delegate those functions to the independent contractor. Once Defendant USA exercised that judgment, it was required to implement it with due care. *Greene, supra,* 745 F.Supp. 1486.

This case moreover, does not invoke the social, economic or political considerations involved in the *Duff* case. In Duff, the court emphasized that these considerations were found because the government was relying on the special expertise of the contractor. Clearly, the USPS is the party who possesses the special expertise in the matter at hand. The accident

12

occurred while the contractor was operating equipment controlled and maintained by the USPS on USPS property. Moreover, all safety issues on the docks were the responsibility of the USPS. There is no policy consideration in deferring safety or training to an entity that neither has the knowledge nor the control of the equipment or issues in question. Undisputedly, the government maintained the "day-to-day" control over the area and the safety issues invoked in this case. *See, Duff, Supra*. Thus, under the analysis of the *Duff* court, this Court has jurisdiction over this matter.

      **B.**    **PLAINTIFF HAS STATED A VIABLE CLAIM FOR PREMISES LIABILITY AGAINST THE UNITED STATES.**

In Count III of his Second Amended Complaint, Plaintiff has alleged that Defendant USA is liable for Plaintiff's injuries as the result of an unsafe condition on the premises owned and under the control of the Defendant USA, specifically the dock area of the Post Office. Consequently, Plaintiff has stated a claim of premises liability against the Defendant USA under the theory of premises liability.

As articulated above, the FTCA provides that the Defendant "United States shall be liable . . .in the same manner and to the same extent as a private individual under like circumstances . . . . 28 U.S.C. § 2674. Therefore, the Defendant USA will be liable under the theory of premises liability to the same extent that an individual would be liable under the laws of the State of Missouri. *Greene v. United States,* 745 F.Supp. 1486 (E.D.Mo. 1990).

Under Missouri law, a possessor of property is liable to invitees who sustain injuries as the result of an unsafe condition which they knew, or should have known, existed on said premises. *Carter v. Kinney,* 896 S.W.2d 926 (Mo. 1995); *see also, Greene,* 745 F.Supp. at 1491, (*citing, Cox v. J.C. Penney Co.,* 741 S.W.2d 28 (Mo. 1987)). A subcontractor or its employee is owed the same duty from the landowner as other invitees on said premises. *See, Greene,* 745

13

F.Supp. at 1491 (*citing, Lott v. Anheuser Busch, Inc.,* 481 S.W.2d 517, 521 (Mo.App. 1972)); *see also, Johnson v. Jadico, Inc.,* 155 S.W.3d 99 (Mo.App.S.D. 2005).

Plaintiff, in his Second Amended Complaint, has sufficiently alleged a premises liability against the Defendant USA. In Count III, Plaintiff has alleged that the Defendant USA owned and controlled of the premises on which the incident occurred. Second Amended Complaint, ¶21. Plaintiff, further, alleges a dangerous condition with regard to the premises, which Defendant knew or should have known about, and that as a result, Plaintiff was injured. (Second Amended Complaint, ¶¶ 22-24).

As discussed above, the duty owed to the Plaintiff and to the invitee by Defendant as the owner and possessor of the premises as imposed by Missouri law, was not a discretionary function exempted by the FTCA. Courts have consistently applied the premises liability law of the state in which the incident occurred in actions against the United States. The Eighth Circuit has stated that United States could be held liable under Illinois law for failing to maintain the premises in a reasonably safe condition, resulting in the plaintiff tripping over a wire hanger in a camp sight. *Handy v. United States,* 867 F.2d 1150 (8th Cir. 1989). In *Strange v. United States,* the Sixth Circuit held that the plaintiff had stated a viable premises liability claim against the USPS for failing to prevent an employee, known for sexually harassing behavior, from assaulting patrons of the USPS. 114 F.3d 1189, 1997 LS 295589 (6th Cir. 1997)(unpublished), attached hereto as Appendix 2. Similarly, in *LaFond v. United States,* the Eighth Circuit stated that the plaintiff failed to state a claim for premises liability because Minnesota law provided that melting snow was a natural, not artificial cause for icy conditions and that state's law did not impose an "undertaking rule" on property owners who attempt to clear adjoining public sidewalks of ice. 781 F.2d 153 (8th Cir. 1986). *See also, Heller v. United States,* 99 F.3d 1143,

1996 WL 607138 (8th Cir. 1996)(unpublished), attached hereto as Appendix 1. In each of these cases, the Court did not excuse the government's negligence as a discretionary function. In stead, the Courts applied the duty in accordance with the laws of the states in which the incident occurred.

## Conclusion

For the foregoing reasons, Defendant United States of America motion to dismiss for lack of subject matter jurisdiction should be denied.

Respectfully submitted,

KRUSE, REINKER & HAMILTON, L.L.C.


  /s/ Mary J. Ligocki

Mary J. Ligocki ED# 17433
2016 S. Big Bend Blvd
St. Louis, Missouri 63117
Telephone: (314) 333-4140
Fax:        (314) 754-2678
maryl@krhlawfirm.com
Attorney for Plaintiff

CERTIFICATE OF SERVICE

      I hereby certify that on January 9, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Mr. Thomas. C. Rich, tomrich@tomrichlaw.com, Mr. Chad deRoode, cderoode@bjpc.com, and Ms. Christina Moore, Christina.moore@usdoj.gov.

                                                ___/s/ Mary J. Ligocki____